Brauns *v.* Swarthmore Borough.

Argued February 7, 1972, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Holbrook M. Bunting, Jr.,* with him *Trevaskis, Doyle, Currie, Nolan & Bunting,* for appellant.

*Clarence G. Myers,* for appellee.

OPINION BY JUDGE KRAMER, March 27, 1972:

This is an appeal from a Final Order of the Court of Common Pleas of Delaware County affirming a Resolution of the Swarthmore Borough Council (Borough) which denied an application by Beulah Brauns (Brauns) for approval of a two-lot subdivision plan.

In 1940, Brauns, a widow, purchased a 58,015 square foot rectangular-shaped tract of land on Vassar Avenue in the Borough of Swarthmore. In that same year Brauns (and her late husband) constructed a residence located on the rear two-thirds of the lot. The

lot and residence face onto Vassar Avenue, while to the rear of the lot there exists a yet unopened but proposed street, known as Harvard Avenue.

After her husband's death in 1970, Brauns, intending to sell the entire tract, on September 18, 1970, submitted for informal consideration a plan to subdivide her lot into two lots. After informal conferences whereby the plan was revised three times, Brauns formally submitted a subdivision plan on November 25, 1970.

The proposed plan called for the division of the tract into two separate lots. The smaller, front lot, facing Vassar Avenue, has an area of 14,006 square feet and is comparable in size to most of the other lots in the immediate neighborhood. The larger, rear lot extends to the proposed Harvard Avenue and contains 43,010 square feet. It was proposed that the larger lot would have access to Vassar Avenue by means of an easement twenty feet in width extending along the northerly side of the smaller lot.

The plan was submitted to the Swarthmore Planning Commission, which by letter of December 1, 1970 indicated its preliminary approval. Two additional revisions followed informal conference, and on December 18, 1970, the subdivision plan was formally approved by the Delaware County Planning Commission. Following the County approval, the Swarthmore Planning Commission formally approved the subdivision plan on December 21, 1970. In reliance upon the December 1, 1970 preliminary approval of the local Planning Commission, Brauns conveyed the larger, rear lot to a third party on December 1, 1970. Pursuant to the Borough's subdivision ordinance, Borough Council considered the subdivision plan at its regular meeting on January 11, 1971, and at another (continued) meeting held January 16, 1971. At both of these public meetings presentations of remarks and written statements by Brauns

and neighbors, as well as civic organizations, were received by Borough Council. Upon consideration of all of the matters presented to Borough Council, Council disapproved the subdivision plan following the January 16th meeting.

Appeal was taken by Brauns to the Common Pleas Court of Delaware County. The matter was presented to the Court on the same record made before the Borough Council. No additional testimony or evidence was received by the Court. Following the presentation of briefs and argument, the Court on August 13, 1971 dismissed the appeal of Brauns, thereby affirming the action of Borough Council.

In view of the fact that the court below did not take additional testimony or receive additional evidence, the scope of review of this court is to determine whether or not Borough Council abused its discretion or committed an error of law. *Clemens, et al. v. Upper Gwynedd Township Zoning Hearing Board,* 3 Pa. Commonwealth Ct. 71, 281 A. 2d 92 (1971) ; *Rubin v. Zoning Board of Adjustment,* 1 Pa. Commonwealth Ct. 406, 274 A. 2d 208 (1971).

In her appeal, Brauns argues that the court erred because (1) the Borough failed to act within the forty-day statutory period set forth in the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P. L. , No. 247, 53 P.S. §10101 et seq., providing for an automatic approval if disapproval of such a proposed subdivision plan is not made in that time period, and (2) that the Borough had manifestly abused its discretion in its application of the standards and requirements of the zoning and subdivision ordinances.

The Municipalities Planning Code, *supra,* (Code) clearly sets forth that if the borough council does not render its decision and communicate it to the applicant within the mandated forty-day period the application

shall be deemed to have been approved by borough council. However, Section 508 of the Code, 53 P.S. §10508, states that the applicant may agree in writing to extend that time period. In this case Brauns through her duly authorized agent did agree to such an extension of time, and therefore there is no merit to her argument that Council did not act within the statutorily mandated time period.

Prior to our disposition of the abuse of discretion issue, we must set forth our observations on the procedures utilized in this case. The absence of any formulation of procedures to be followed by the governing body or the courts in either statutory or decisional law necessitates such an explication. We first note that in Section 512 of the Code, 53 P.S. §10512, the Legislature has provided that the procedures to be followed should be carried out in the "same manner" as is applied to zoning appeals. Next, Section 508 of the Code, 53 P.S. §10508, refers to public hearings, and the Code describes public hearings in Section 708, 53 P.S. 10708 (b), wherein it is provided that "[a] verbatim record of the hearing shall be caused to be made by the governing body whenever such records are requested by any party to the proceedings. . . ." In Section 908 of the Code, *supra*, 53 P.S. 10908, (7) it is provided: "The board or the hearing officer, as the case may be, shall keep a record of the proceedings, either stenographically or by sound recording, and a transcript of the proceedings and copies of graphic or written material received in evidence shall be made available to any party at cost." Lastly on this point, in Section 1009 of the Code, *supra*, 53 P.S. §11009, we find: "If no verbatim record of testimony before the board was made, or if upon motion, it is shown that proper consideration of the zoning appeal requires the presentation of additional evidence a judge of the court may hold a hear-

ing to receive such evidence or may remand the case to the board or refer it to a referee to receive such evidence. . . ." From these statutory references it may be inferred that the Legislature acknowledged that some hearings under the zoning and subdivision laws will not necessarily have a verbatim transcript provided to the court upon appeal. We make mention of this inference for the reason that in this case the entire record of testimony before Borough Council is contained on four sheets of the printed record among which is a short summary prepared by the Borough Secretary of the statements made by the various witnesses. In each and every instance, the description is not sufficient so as to permit anyone to review with specificity what transpired at the public hearing in an attempt to determine whether there was sufficient evidence presented to Borough Council upon which they could exercise their discretion in denying the application for this subdivision plan. Recognizing as we do that there is no statutory requirement for a verbatim transcript of testimony if no one requests same, we must accept what little evidentiary value may be gleaned from the brief description of the Borough Secretary as to what transpired before Borough Council.

The subdivision of a tract of land such as is presented to us in this case is no light matter. The case involves important property rights, not only of the applicant but of the citizens of this Borough. We suggest that in the future courts of common pleas in this Commonwealth exercise their discretion and cause an adequate record to be built so as to facilitate a proper review by an appellate court.

Referring to the adjudication of Borough Council, we note that in addition to the mandatory forty-day requirement found in Section 508 of the Code, *supra,* 53 P.S. 10508, there is another requirement that the gov-

erning body (Borough Council) shall "(3) . . . render a decision and communicate it to the applicant within the time *and in the manner required herein. . . .*" (Emphasis added) That "manner" is set forth in the following language, *inter alia*: "(2) When the application is not approved in terms as filed the decision shall specify the defects found in the application and describe the requirements which have not been met and shall, in each case, cite to the provisions of the statute or ordinance relied upon."

The first paragraph of the Borough Council decision (resolution) sets forth that the subdivision plan was in violation of the County subdivision regulations, which state: "Residential lots shall in general front on a municipal street, existing or proposed." Borough Council was in error in this determination for the reason that the larger or rear lot of the subdivision plan is adjacent to Harvard Street, and the record is not clear in which direction the rear lot may "in general front." Although Harvard Street does not exist physically, the record clearly shows that it is a "proposed" street. In addition the Planning Commission recommended that any possible violation in this regard should be waived in favor of the proposed subdivision.

In the second paragraph of its decision, Borough Council determines that the dwelling situated on the rear lot would "block the view" of the dwelling proposed to be constructed on the front lot. Borough Council did not refer to any statute or ordinance for reliance in finding this alleged violation. In the third paragraph of its decision, Borough Council determined that the construction of a dwelling on the smaller front lot would create a hardship on the occupants of an adjoining lot on the southerly side, and thereby cause harm to the neighborhood balance and ". . . cut off the openness that now exists." Here again, Borough Coun-

cil did not refer to any provision of any statute or ordinance as support for this alleged violation. Furthermore, from the very brief transcript of the testimony and evidence presented to the Borough Council, we believe the finding of the Council to be in error, for the reason that the occupants of the adjoining lot are noted as having made an offer to purchase the smaller lot, and would approve even the purchase by a third party for the purpose of constructing a dwelling thereon. Based upon the record, it can hardly be said that the adjoining property owners to the south would have a hardship worked upon them by the construction of a dwelling by either Brauns or her successor in interest.

In the fourth and last enumerated paragraph of the Borough Council's decision, they refer to Section 7 of the Borough subdivision ordinance which section contains eighteen subparagraphs providing for rather general requirements necessary for approval of a subdivision plan. Borough Council in its decision chose four of these subparagraphs, none of which is specifically identified, but all of which are couched in vague language and none of which is supported by the record. In addition, these four subparagraphs of the decision refer to the comprehensive plan of the Borough. The record is very clear that the Borough has never adopted a comprehensive plan, but rather relies upon its zoning ordinance and zoning map as its comprehensive plan. There is nothing in this record indicating that either of the two proposed lots under the subdivision would violate any of the provisions of the zoning ordinance. The four subdivisions of the fourth paragraph of the decision refer to such things as ". . . the land is not suited for the purpose . . .;" ". . . the proposed subdivision is not coordinated with other lots in the neighborhood . . .;" ". . . the second dwelling would be an excrescence . . .;" ". . . undue proximity to valuable

homes already in the neighborhood . . ." and ". . . the subdivision plan . . . not . . . drawn . . . with a view promoting the harmonious development of the Borough . . . ." These reasons can hardly be held to be proscriptions of an otherwise legitimate use of one's property.

Taking the above analysis into consideration, we hold that Borough Council committed an error of law in that it did not make findings that the proposed subdivision plan was in violation of any statute or ordinance, and it committed a manifest abuse of discretion in not approving the subdivision plan based upon the record before it. In the absence of any showing that the proposed subdivision plan would violate any of the provisions of the zoning ordinance and the absence of any proof that the granting of the subdivision plan would adversely affect the health, welfare, safety or morals of the community, Borough Council erred in not approving same. All of the reasons given by the Borough Council in its decision might well be used to defeat a proposed zoning ordinance if such criteria were listed in a comprehensive plan of a municipality. However, there is no statutory authority to permit such nebulous reasons to defeat a proposed subdivision plan.

Although we may be sympathetic to the neighbors in this case, the fact remains that a property owner in this Commonwealth may still use his property as he sees fit so long as he does not violate the constitutional rights of others or the statutory provisions regulating the use of his property under the police powers. *Lord Appeal*, 368 Pa. 121, 125, 81 A. 2d 533, 535 (1951). In approving this subdivision plan, as we do, we note that the neighbors will still be protected when the new structure is built on the front lot by virtue of the zoning ordinance provisions of their Borough.

The Order of the court below is reversed.