J-A14036-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

MICHAEL L. AND JESSIE PINCUS,  :  IN THE SUPERIOR COURT OF
H/W                            :       PENNSYLVANIA
                               :
            Appellants         :
                               :
        v.                     :
                               :
CITIZENS BANK OF PENNSYLVANIA  :
                               :
            Appellee           :  No. 2825 EDA 2017

Appeal from the Order Dated August 8, 2017
in the Court of Common Pleas of Chester County
Civil Division at No.:  2017-05903-MJ

BEFORE:   GANTMAN, P.J., SHOGAN, J., and PLATT*, J.

MEMORANDUM BY PLATT, J.:                    **FILED OCTOBER 03, 2018**

Appellants, Michael L. Pincus, and Jessie Pincus, his wife, appeal *pro se* from the order sustaining preliminary objections to their complaint in equity against Appellee, Citizens Bank.  We affirm on the basis of the trial court opinion.

In its opinion, the trial court fully and correctly sets forth the relevant facts and procedural history of this case.  (**See** Trial Court Opinion, 10/03/17, at 1-7).  Therefore, we have no need to restate them here.  For the convenience of the reader, we note briefly that several months following the foreclosure on their home, Appellants filed this complaint in equity claiming chiefly that Appellee Citizens Bank should have accepted their offer of a

_____
*   Retired Senior Judge assigned to the Superior Court.

contingent interest in two reverse mortgage commitments as full settlement of their outstanding indebtedness, albeit at a substantial discount.[1]

After a thorough review of the record, the briefs of the parties and the well-reasoned opinion of the Honorable Jeffery R. Sommer, we conclude that there is no merit to the claim raised.  Even accepting Appellants' claim as true, their complaint was legally insufficient to set forth a viable cause of action against Appellee.  (**See** Trial Ct. Op., at 4-7).

Accordingly, we affirm on the basis of the trial court opinion.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/3/18

---

[1] We note for completeness and clarity that while Appellants' complaint is readily inferable, the brief is substantially non-compliant with the Pennsylvania Rules of Appellate Procedure, and, among other omissions, contains no statement of questions involved.  **See** Pa.R.A.P. 2116.  Although we could quash the appeal on that basis alone, we decline to do so.

MICHAEL L. PINCUS and   :   IN THE COURT OF COMMON PLEAS
JESSIE PINCUS, h/w

        :   CHESTER COUNTY, PENNSYLVANIA

    VS.      :

        :   NO. 2017-05903-MJ

        :

CITIZENS BANK OF PENNSYLVANIA   :   CIVIL ACTION

**OPINION PURSUANT TO Pa.R.A.P. 1925**

I. PROCEDURAL SETTING

 This matter comes before the Court as a result of an appeal filed by Appellants Michael L. Pincus and Jessie Pincus, h/w (hereinafter "Appellants") from this Court's Order of August 8, 2017, granting the Preliminary Objections of Defendant Citizens Bank of Pennsylvania (hereinafter "Appellee" or "Bank") which dismissed Appellants' Complaint in Equity. Appellants timely filed this appeal on September 1, 2017. By Order of August[1] 6, 2017, the Court directed Appellant to prepare a Concise Statement of Errors Complained Of on Appeal. The Concise Statement was received in Chambers on September 22, 2017. The matter is now ready for determination.

II. FACTS

 As set forth in the Complaint, Appellants' action arises out of a mortgage foreclosure proceeding that took place in 2014. Appellants purchased a certain parcel of real property located at 586 Franklin Way, West Chester, Pennsylvania (hereinafter "the Property") on November 7, 1995. See, *Complaint at ¶4.* On December 30, 2003, Michael Pincus, only, executed a Home Equity Line of Credit Agreement with the Bank

---

[1] The Order was erroneously dated as August 6, 2017 when it should have been dated September 6, 2017.

in the original amount of $250,000.00 (hereinafter "Note"). *Id. at* ¶5. The Note was secured by a mortgage on the Property and was recorded in the Officer of the Recorder of Deeds of Chester County. *Id. at* ¶6. According to Appellants, on January 7, 2014, the Home Equity Loan reverted to a mortgage. *Id. at* ¶7. On February 27, 2014, Michael Pincus filed a Reverse Mortgage Application and, two months later on April 29, 2014, received a Reverse Mortgage commitment in the amount of $191,130.00. *Id. at* ¶¶9-10.

On May 15, 2014, Michael Pincus sent a hardship letter to the Bank with income verification and a copy of the Reverse Mortgage commitment. *Id. at* ¶11. In his letter, Michael Pincus pleaded with the Bank to accept the Reverse Mortgage as payment in full of the Note with the Bank. *Id.* Michael Pincus also requested that his account be transferred to the negotiating department. *Id. at* ¶¶12-13. The Bank did not accept the Reverse Mortgage as payment in full. Instead, on or about July 11, 2014, the Bank sent an Act 91 Notice, indicating that it intended to foreclose on the mortgaged property. *Id. at* ¶14.

Upon receipt of the Act 91 Notice, Michael Pincus again contacted the Bank and inquired as to why his account was not transferred to the negotiating department as requested. *Id. at* ¶15. The Bank responded that its policy is to "never negotiate." *Id.* Subsequently, Michael Pincus met with a consumer credit counselor and filled out an application with the Pennsylvania Housing Finance Agency ("PHFA"). *Id. at* ¶16.

On September 4, 2014, Appellants were served with a Complaint in Mortgage Foreclosure. *Id. at* ¶17. Upon learning that Michael Pincus had a pending PHFA application, the Bank discontinued the action. *Id. at* ¶¶17-18. Thereafter, on

2

September 15, 2014, Appellants learned that the PHFA application was denied. *Id. at* *¶19*. On October 31, 2014, Appellants received a new Reverse Mortgage Commitment letter for the amount of $201,995.00, which they requested be accepted as payment on the existing Note. *Id. at ¶20.*

The Bank initiated a second Mortgage Foreclosure Action on or about December 4, 2014. *Id. at ¶22.* The Bank ultimately prevailed at the summary judgment stage, securing an *in rem* judgment against Appellants in the amount of $270,620.48. *Id. at ¶¶23-24.* Appellants appealed the judgment to the Superior Court.[2]

Appellants subsequently filed the Complaint in Equity at issue here on June 9, 2017. The Bank filed Preliminary Objections to the Complaint on July 17, 2017. The Bank asserted a demurrer to Appellants' Complaint on the basis that they failed to assert any cause of action against the Bank. This Court agreed. Upon review and consideration of Appellants' Complaint, I concluded that the Complaint merely detailed Appellants unsuccessful attempts to resolve the underlying delinquency under the Note and Mortgage and, subsequently, their inability to defend the mortgage foreclosure action. The Complaint ultimately demands $400,000.00 in damages based upon the Bank's refusal to negotiate a resolution of their mortgage. Even accepting all of Appellants' allegations as true, such a claim is legally insufficient to state a cognizable cause of action. I issued an Order on August 8, 2017 sustaining the Preliminary Objections and dismissing the Complaint. Appellants could have filed an amended pleading in an attempt to state a proper claim, but they did not do so.

---

[2] Appellants filed two appeals – one from the Order dated December 13, 2016 which denying reconsideration and one from the Order dated November 29, 2016 granting the motion for summary judgment. The appeal of the December 13, 2016 was quashed as an order denying reconsideration is not appealable.

3

Appellants' Concise Statement of Matters Complained Of on Appeal contains three (3) allegations of errors and are set forth as follows:

1. The Bank caused harm to Appellants by the failure to acknowledge that the Appellants offered a payoff of the outstanding balance owed to the Bank several months before the foreclosure proceeding was filed.

2. The Bank violated the Pennsylvania Banking Department and their Loss Mitigation Policy regarding the sole purpose and mission is to avoid foreclosure upon the evaluation of the homeowner's ability to repay the mortgage loan.

3. The Bank failed to offer Appellants the opportunity to participate in a face to face meeting and/or mediation.

III. ISSUE

Did Appellants' Complaint set forth a viable cause of action against the Bank?

IV. HOLDING

No, Appellants' Complaint did not set forth a viable cause of action against the Bank.

V. RATIONALE

A. Scope and Standard of Review

This appeal arises from the granting of the Bank's Preliminary Objections to the Complaint, resulting in the dismissal of Appellant's claims. When reviewing a trial court's order sustaining preliminary objections in the nature of a demurrer and dismissing a suit, the Superior Court's scope of review is plenary. See, *Donahue v. Federal Express Corp.*, 753 A.2d 238, 241 (Pa. Super. 2000). Appellate review of a challenge to a trial court's decision to grant preliminary objections is guided by the

4

following standard:

> [The Superior Court's] standard of review of an order of the trial court overruling or granting preliminary objections is to determine whether the trial court committed an error of law. When considering the appropriateness of a ruling on preliminary objections, the appellate court must apply the same standard as the trial court. Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint. When considering preliminary objections, all material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom. Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief. If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections.

See, *Haun v. Community Health Systems, Inc.*, 14 A.3d 120, 123 (Pa. Super. 2011); see also, *Feingold v. Hendrzak*, 15 A.3d 937, 941 (Pa. Super. 2011). Thus, the appellate court is charged with deciding whether, under the facts alleged in the Complaint, the Appellants set forth a viable cause of action.

B.   Discussion

Appellants' Complaint set forth in detail Appellants' unsuccessful attempts to cure their delinquency under the Note and Mortgage and, thereafter, their failed efforts to defend the mortgage foreclosure action. Each issue raised by Appellants in their Concise Statement involves actions they believe the Bank should have taken, or not taken, in the course of the underlying mortgage relationship and foreclosure proceeding. They did not state a cause of action. When viewing the Complaint with a most gracious and liberal interpretation, Appellants may have attempted to assert a

5

cause of action for breach of duty of good faith under the terms of the Note and Mortgage. To the extent this is so, no such cause of action exists.

"The duty of good faith has been defined as [h]onesty in fact in the conduct or transaction concerned. Where a duty of good faith arises, it arises under the law of contracts, not under the law of torts." *Creeger Brick and Building Supply, Inc. v. Mid-State Bank and Trust Co.*, 385 Pa.Super. 30, 560 A.2d 151, 153 (1989) (citations, quotations, and quotation marks omitted). In Pennsylvania, the duty of good faith has been recognized in limited situations. However, the Superior Court has held that a lending institution does not violate a separate duty of good faith by adhering to its agreements with a borrower or enforcing its contractual rights as a creditor. See *Corestates Bank, N.A. v. Cutillo*, 723 A.2d 1053 (Pa. Super.1999); *Heritage Surveyors & Eng'rs, Inc. v. Nat'l Penn Bank*, 801 A.2d 1248, 1253 (Pa. Super. 2002); *Creeger Brick and Building Supply, Inc.*, supra.

> The duty of good faith imposed upon contracting parties does not compel a lender to surrender rights which it has been given by statute or by the terms of its contract. Similarly, it cannot be said that a lender has violated a duty of good faith merely because it negotiated terms of a loan which are favorable to itself.

*Creeger Brick and Building Supply, Inc.*, 560 A.2d at 154.

In other words, the Bank has no obligation to negotiate with Appellants, to mediate with Appellants, or to accept a "promise to pay", e.g. the Reverse Mortgage Commitment letter, as full satisfaction of the Note. The Bank is entitled to foreclose on the property subject to the terms of the Note and Mortgage based upon Appellants' admitted default. This Court can sympathize with the difficult situation in which

6

Appellants find themselves having lost their home in a mortgage foreclosure; however, they have no legal remedy against the Bank based upon the Complaint filed here.

Based upon the foregoing analysis, I respectfully request that the Superior Court affirm my Order of August 8, 2017, sustaining the Bank's Preliminary Objections and dismissing the Complaint.

All of which is respectfully submitted.

BY THE COURT:

Date: _October 2, 2017_

_Jeffrey R. Sommer_                    J.

7